UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANASTASIYA UZZHINA,<br><br>Petitioner,<br><br>v.<br><br>CRHISTOPHER CHESTNUT, et al.,<br><br>Respondents. | No. 1:25-cv-01594-DAD-SCR<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on petitioner's *ex parte* motion for temporary restraining order filed on November 19, 2025. (Doc. No. 2.) For the reasons explained below, the court will grant in part and deny in part petitioner's motion.

**BACKGROUND**

On November 19, 2025, proceeding through counsel, Anastasiya Uzzhina filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging her detention by United States Immigration and Customs Enforcement ("ICE"). (Doc No. 1.) Petitioner Uzzhina asserts the following claims in that petition: (1) violation of her rights under the Fifth Amendment Due Process Clause as a result of her re-detention; (2) violation of her rights under the Fifth Amendment Due Process Clause as a result of being provided inadequate procedures regarding third country removal; (3) violation of the Immigration and Nationality Act ("INA") and

1

1 Applicable Regulations; (4) violation of her rights under the Fifth Amendment Due Process
2 Clause as a result of her indefinite detention; and (5) violation of her rights under the Fifth
3 Amendment Due Process Clause based upon inadequate procedures regarding third country
4 removal.[1] (Doc. No. 1 at ¶¶ 57–79.) In support of her pending motion for temporary restraining
5 order, petitioner has presented evidence of the following:

Petitioner entered the United States on a J-1 nonimmigrant visa on June 7, 2003, and filed an asylum application. (Doc. No. 2-1 at 8–9.) Petitioner was ordered removed to either Russia or Kazakhstan on April 29, 2004. (*Id.*) This order of removal became final on May 7, 2012, when her petition for review was denied, and the mandate was issued. (*Id.*) Once the order became final, petitioner self-surrendered on June 14, 2012, for removal and provided letters from the Russian and Kazakh Consulates stating that neither country recognized her as a citizen of those countries. (*Id.* at 8–9, 19–22). Petitioner was placed on an order of supervision ("OSUP") the same day she self-surrendered to immigration authorities. (*Id.* at 11–12.) The OSUP required petitioner to obey all laws and stated that a failure to comply with that condition of release may result in a return to custody. (*Id.*)

Over thirteen years later, on October 20, 2025, petitioner was convicted in the Sacramento County Superior Court of driving a vehicle under the influence of alcohol in violation of California Vehicle Code § 23152(b). (*Id.* at 14.) On November 14, 2025, ICE agents detained petitioner. (*Id.*) Petitioner was provided a Notice of Revocation of Release letter at that time stating that ICE had determined that petitioner could be expeditiously removed and that her October 20, 2025, misdemeanor conviction violated the terms of her OSUP release. (*Id.*) The letter further stated that based on the above, and pursuant to 8 C.F.R. §§ 241.4, 241.13, petitioner would remain in custody. (*Id.*) Petitioner was informally interviewed by ICE Officer Ryan Chaix on November 14, 2025. (*Id.* at 16–17.) Based on the documentation provided, Officer Chaix and petitioner discussed only petitioner's past efforts to obtain travel documents, and not her recent misdemeanor conviction for driving under the influence. (*Id.*)

---

[1] The court notes that petitioner's second and fifth claims for relief are duplicative but includes both for accuracy.

2

1    Petitioner moved for a temporary restraining order on November 19, 2025.  (Doc. No. 2.)
2    Petitioner requests that this court order her immediate release from custody, and that respondents
3    be enjoined from both (1) re-detaining her without a hearing before a neutral adjudicator, and (2)
4    removing her to any third country without constitutionally compliant procedures.  (*Id.* at 2–3.)
5    On November 21, 2025, respondents filed an opposition to petitioner's motion.  (Doc. No. 11.)

## LEGAL STANDARD

7    The standard governing the issuing of a temporary restraining order is "substantially
8    identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v.*
9    *John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for
10   preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the
11   merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the
12   balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans,*
13   *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council,*
14   *Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th
15   Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just
16   possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los*
17   *Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must
18   make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
19   1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is
20   appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were
21   raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation
22   omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v.*
23   *City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co.*
24   *v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than
25   merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate*
26   immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an
27   injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the
28   plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff bears the burden of demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131.

## DISCUSSION

**A.     Likelihood of Success on the Merits**

Petitioner advances several arguments as to why she is likely to prevail on the merits of her claims, including that her detention is unlawful because there are no changed circumstances justifying her re-detention and ICE failed to follow its own regulations in detaining her under these circumstances.[2] (Doc. No. 2 at 14–15, 17–18.)

In opposition, respondents argue only that there are changed circumstances and that petitioner's removal is reasonably foreseeable merely because ICE states a belief that it will be able to obtain travel documents for her removal.[3] (Doc. No. 11 at 3–4.)

---

[2] Petitioner also argues she is entitled to notice, an opportunity to be heard, and to apply for fear-based relief prior to removal to a third country. (Doc. No. 28–32.) Respondents do not engage with petitioner's request for a temporary restraining order regarding third country removal. (Doc. No. 11). The court will deny without prejudice this request for temporary injunctive relief because the evidence before the court at this time is that respondents intend to remove petitioner to either Russia or Kazakhstan, not a third country (Doc. No. 11-1 at ¶ 14). *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *2 n. 2 (E.D. Cal. Aug. 20, 2025).

[3] Respondents also argue that petitioner is not entitled to relief because the length of her detention has not yet approached the presumptively reasonable six month period. (Doc. No. 11 at 3–4.) "A noncitizen may only be held in confinement until 'it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Vlasov v. Bondi*, No. 25-cv-01342-AJB-MSB, 2025 WL 2258582, at *2 (S.D. Cal. Aug. 7, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001)). "A six-month period of detention is presumptively reasonable." *Vlasov*, 2025 WL 2258582, at *2. The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*. *See Clark v. Martinez*, 543 U.S. 371, 384 (2005) ("*Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal."). Although the length of petitioner's detention has not approached six-months, petitioner may still be entitled to relief if respondents did not provide her adequate process prior to her re-detention. *Khamba*, 2025 WL 2959276, at *6 (enjoining DHS from re-detaining the petitioner without demonstrating a change in circumstances and providing a pre-detention hearing).

1    "Supervised release and any revocation of such release thereafter is governed by either 8
2    C.F.R. § 241.4 or 8 C.F.R. § 241.13." *Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-cv-
3    2111-JES-DEB, 2025 WL 2988356, at * 2 (S.D. Cal. Oct. 23, 2025). Section 241.4(*l*) states that
4    release may be revoked when a noncitizen violates the conditions of release, the purposes of release
5    have been served, it is appropriate to enforce a removal order, or it is indicated that release is no
6    longer appropriate. Section 241.13(i) states that release may be revoked when the noncitizen has
7    violated the conditions of release or there is a significant likelihood that the noncitizen may be
8    removed in the reasonably foreseeable future. Both regulations require that the noncitizen be
9    notified of the reasons for the revocation of his or her release and promptly afforded an informal
10   interview to give him or her an opportunity to respond to the reasons for revocation. 8 C.F.R.
11   §§ 241.4(*l*)(1), 241.13(i)(3). If a noncitizen remains detained, the regulations state that a second
12   hearing is to be provided by the agency. 8 C.F.R. §§ 241.4(*l*)(3), 241.13(j) (within approximately
13   three months or 6 months respectively). This framework provides "no opportunity to have a neutral
14   party evaluate ICE's unilateral determination of the contested facts." *Guillermo M.R. v. Kaiser*,
15   791 F. Supp. 3d 1021, 1034 (N.D. Cal. July 17, 2025).

16   ICE has a duty to follow its own regulations and, if it fails to do so, the detention is likely
17   a violation of due process.[4] *See Diaz v. Wofford*, No. 1:25-cv-01079-JLT-EPG, 2025 WL
18   2581575, at *7–8 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural
19   regulations may constitute a due process violation."); *Constantinovici v. Bondi*, No. 3:25-cv-
20   02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) ("Both 8 C.F.R. § 241.4
21   and 8 C.F.R. § 241.13 were intended to 'provide due process protections to [noncitizens]
22   following the removal period as they are considered for . . . possible revocation of release . . .'")
23   (quoting *Santamaria Orellana v. Baker*, No. 25-cv-1788-TDC, 2025 WL 2444087, at *6 (D. Md.
24   /////

---

[4] Individuals subject to conditional release have a liberty interest in their continued release. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *3 (E.D. Cal. July 14, 2025); *Guillermo M. R.*, 791 F. Supp. 3d at 1030 ("[L]iberty interests of persons detained under § 1231(a)(6) are comparable to those of persons detained under § 1226(a).") (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1086–87 (9th Cir. 2011)).

Aug. 25, 2025); *Bui*, 2025 WL 2988356, at *3 (recognizing that respondent's failure to follow their own regulations may be a due process violation).

Sections 241.4(*l*) and 241.13(i) "indicate that, when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" *Yan-Ling X. v. Lyons*, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *4 (E.D. Cal. Nov. 7, 2025) (quoting *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)). When ICE claims it has determined changed circumstances, the court should review that claim in light of the factors set out in the regulations. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025) (reviewing ICE's changed circumstances determination regarding the foreseeability of removal in light of the factors in § 241.13(f)).

Here, the record now before the court suggests that petitioner was provided an informal interview regarding her potential removal after being detained following her driving under the influence conviction. (Doc. No. 2-1 at ¶ 7.) Petitioner argues that her detention is unlawful because her removal is not reasonably foreseeable and there have not been any changed circumstances suggesting any current likelihood of her removal. (Doc. Nos. 2 at 15–16; 2-1 at 9.) Respondents argue in conclusory fashion that "given changed circumstances over the past thirteen years, ICE believes that it will be able to obtain travel documents to Russia or Kazakhstan," and effectuate the removal order. (Doc. No. 11 at 3–4.) Notably, respondents have failed to identify what the claimed changed circumstances are, nor have they come forward with any evidence that ICE believes it can actually now obtain travel documents for petitioner's removal. Rather, the declaration of Officer Juarez Chavez presented to the court merely asserts that ICE is preparing applications for petitioner's travel documents. (Doc. No. 11-1 at ¶ 14.)[5]

/////

---

[5] According to the declaration of Ana L. Juarez Chavez filed with respondents' opposition to the pending motion, ICE is preparing to apply for petitioner's travel documents to return to Russia or Kazakhstan. (Doc. No. 11-1 at ¶ 13–14.) Officer Juarez Chavez declares that ICE obtained the necessary information to apply for petitioner's travel documents on November 19, 2025, during its interview of petitioner. (*Id.*)

6

1        When ICE released petitioner on the OSUP in 2012, it impliedly determined that she
2 posed neither a flight risk nor a danger to the community, and that her removal was not
3 reasonably foreseeable. *See Larios v. Albarran*, No. 25-cv-08799-AMO, 2025 WL 3043391, at
4 *7 (N.D. Cal. Oct. 31, 2025). It has been recognized that simply applying for travel documents
5 after detention is insufficient to show changed circumstances warranting the detaining of a
6 petitioner. *See Hoac*, 2025 WL 1993771, at *4 ("The fact that Respondents intend to complete a
7 travel document request for Petitioner does not make it significantly likely he will be removed in
8 the foreseeable future."); *Yan-Ling X*, 2025 WL 3123793, at *5 ("Respondents fail to explain
9 why China did not issue a travel document in the past or why China is likely to issue a travel
10 document for petitioner in the reasonably foreseeable future."); *Khamba v. Albarran*, No. 1:25-
11 cv-01227-JLT-SKO, 2025 WL 2959276, at *10 (E.D. Cal. Oct. 17, 2025) (finding that DHS's
12 application for travel documents after the petitioner's detention did not provide justification for
13 his detention before such application); *Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL
14 3141857, at *4 (C.D. Cal. Oct. 28, 2025) (finding the government did not establish that it was any
15 more likely to acquire travel documents than it has been since the removal order).

16        Additionally, here, ICE failed to provide petitioner with proper notice of this justification
17 for her detention. To the extent that the reason for revocation of release was a change in the
18 foreseeability of petitioner's removal, the notice provided to petitioner was deficient. In this
19 regard, a vague assertion that after a review of petitioner's file, ICE determined petitioner could
20 be expeditiously removed is insufficient to constitute adequate notice. *See M.S.L. v. Bostock*, No.
21 6:25-cv-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025) (finding similar language
22 to be defective); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (finding the
23 insufficient notice was a violation of due process).

24        ICE did provide petitioner notice of a different ground for changed circumstances. The
25 Notice of Revocation of Release states that petitioner's detention was due to her criminal
26 conviction in violation of the OSUP terms. (Doc. No. 2-1 at 14–15.) However, neither the
27 interviewer during petitioner's informal interview nor respondents in their briefing on the pending
28 motion address this purported changed circumstance. (Doc. Nos. 2-1 at 16; 11.) Therefore, the

1  court finds that respondents have abandoned this ground for petitioner's re-detention. *See Otilio*

2  *B.F. v. Andrews*, No. 1:25-cv-01398-KES-EPG (HC), 2025 WL 3152480, at *4 (E.D. Cal. Nov.

3  11, 2025) (finding respondents abandoned the claim that 8 U.S.C. § 1225(b)(2)(A) applied by

4  failing to address the argument in any meaningful way).[6]

5  Based on the foregoing, petitioner is likely to succeed in showing that she has a liberty

6  interest in remaining out of custody, that there have not been changed circumstances justifying

7  her re-detention, and that ICE failed to follow its own regulations when it re-detained her in

8  violation of due process.

**B.     Irreparable Harm**

Petitioner argues that she will suffer irreparable harm from her continued detention and deprivation of her constitutional rights to due process if the court does not grant injunctive relief. (Doc. No. 2 at 32–33.) "[U]nlawful detention certainly constitutes extreme or very serious damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (internal quotation marks omitted). Likewise, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Above, the court has concluded that petitioner will likely succeed on the claim that her continued detention without further review is unconstitutional. The court therefore also concludes that petitioner has demonstrated irreparable harm as to that detention and that consideration of this *Winter* factor favors granting petitioner's motion for a temporary restraining order.

**C.     Balance of Equities and Public Interest**

Petitioner argues that the last two *Winter* factors—the balance of equities and public interest—favor the granting of her motion for temporary restraining order. (Doc. No. 2 at 33–34.)

---

[6] The court notes that had respondents chosen to pursue this claim, there is nothing in the record to suggest that when ICE re-detained petitioner, there was an individualized determination regarding whether petitioner's misdemeanor conviction constituted a change in circumstances such that petitioner could properly be found to pose a danger to the community. *See Y.S.G. v. Andrews*, No. 2:25-cv-1884-SCR, 2025 WL 2979309 at *10 n. 10 (E.D. Cal. Oct. 22, 2025) ("Not all alleged criminal conduct is equal – the severity and nature of unadjudicated charges necessarily matter when an IJ relies on them in making a dangerousness determination.")

The consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]" *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention." *Hoac*, 2025 WL 1993771, at *6 (internal quotation marks omitted) (quoting *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)). Petitioner has demonstrated that she will likely succeed on the merits of her unlawful detention claim for the reasons explained above. Therefore, the court concludes that consideration of the last two *Winter* factors also favor granting petitioner's motion for temporary restraining order.

**D.     Remedy**

Petitioner has requested her release and a pre-detention bond hearing before she can be re-detained. (Doc. No. 2 at 18.) Courts have consistently ordered the release of petitioners and enjoined re-detention absent a pre-detention hearing when ICE failed to follow its own regulations or failed to show an actual change in circumstances. *See e.g. Nguyen v. Noem*, No. 25-cv-02792-LL-VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("[C]ourts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.'") (quoting *Truong v. Noem*, No. 25-cv-02597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025)); *Khamba*, 2025 WL 2959276, at *11 (ordering the petitioner's immediate release and a pre-detention hearing requiring DHS to show a change in circumstances that would justify re-detention); *Yan-Ling* X, 2025 WL 3123793, at *3 (ordering petitioner's immediate release and enjoining re-detention unless ICE obtained a travel document for her removal or followed all procedures in 8 C.F.R. §§ 241.1(*l*), 241.13(i)); *Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025) (ordering the petitioner's immediate release where the respondents failed to show changed circumstances pursuant to 8 C.F.R. § 241.13(i)(2)).

/////

/////

/////


**CONCLUSION**

For the reasons stated above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED in part and denied in part as follows:

    a. Respondents are ORDERED to immediately release petitioner from custody;

    b. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge;

    c. Petitioner's request for a temporary restraining order enjoining respondents from removing her to a third country without notice and an opportunity to be heard is DENIED without prejudice to a renewed motion for temporary restraining order if such issue becomes ripe for the court's review;

2. The parties are directed to meet and confer, and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order; and

3. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated:   **December 2, 2025**              _[signature] Dale A. Drozd_
                                            DALE A. DROZD
                                            UNITED STATES DISTRICT JUDGE